418 A.2d 737

**COMMONWEALTH of Pennsylvania**

v.

**Otis WALKER, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted July 17, 1979.

Filed Feb. 29, 1980.

312

Arthur R. Shuman, Jr., Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

O'BRIEN, Judge:

Appellant, Otis Walker, Jr., was convicted by a jury of murder of the third degree, aggravated assault, criminal conspiracy and various weapons offenses. Post–verdict motions were denied and appellant was sentenced to consecutive prison terms of ten to twenty years for the murder conviction and one to two years for the assault conviction. This appeal followed.

■ Appellant first argues that the trial court erred in permitting evidence of an alleged confession by appellant

---

\* Justice Henry X. O'Brien of the Supreme Court of Pennsylvania, and Judge Robert W. Honeyman of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

and evidence of in and out of court identifications by a witness because appellant was illegally arrested and this evidence flowed directly from the alleged illegal arrest. The facts are as follows.

On December 9, 1975, Harold Berry and Jerome Thomas were stabbed in two separate incidents closely related in time and location in North Philadelphia by a group of individuals. Thomas survived his wounds, but Berry died shortly after the incident. The following description went out over the police radio "Six negro males from the 24th and Berks Street gang. One was 6'4", thin build, wearing a brown cashmere coat and a black hat. Second male had on an army field jacket with the hood pulled up. Third male was negro with a white tee shirt on. No description of the other males. Males went south on 32nd from Berks in a white Oldsmobile". Fifteen minutes later, police arrested three males on Judson Street between 23rd and 24th Streets. Two were wearing army jackets and a third was wearing a blue jacket over a white tee shirt. No white Oldsmobile was in the vicinity. The three, one of whom was appellant, were taken to the scene of the stabbing, where Janice Berry, sister of the deceased and a witness to the stabbing, identified appellant as one of the assailants. Appellant subsequently made a partially inculpatory statement.

Our Supreme Court recently reviewed the conviction of Cleveland Powers, a co–defendant of appellant who was arrested with appellant. On the same set of facts, the Court stated:

"While it may be true, as appellant argues, that many young black men in the 24th and Berks Streets area wear green army jackets and white tee–shirts, nevertheless, the discovery of the three youths, together on the street, in the neighborhood to which the suspects had fled, ten to fifteen minutes after the crime had occurred, where the three youths fit descriptions of the suspects and where there were no other persons matching those descriptions in the area, presented a combination of circumstances which was surely sufficient to justify a reasonable belief that

they could well be the guilty parties. Thus probable cause existed to arrest appellant. Compare *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974), with *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970). Since the arrest was legal, appellant's argument that his confession should have been suppressed because it was the fruit of an illegal arrest is without merit." *Commonwealth v. Powers*, 484 Pa. 198, 203, 398 A.2d 1013, 1015 (1979). As the instant appeal involves identical facts, we are constrained to follow *Powers*. Since the arrest was legal, all fruits of the arrest were properly admitted into evidence.

■ Appellant next argues that the trial court erred in limiting appellant's voir dire of prospective jurors concerning possible bias or interest in the case. The entire jury panel was questioned preliminarily about possible bias or interest, or the inability to follow the instructions of the court in rendering a fair verdict. Any of the prospective jurors who indicated a possible bias, interest, or inability to render a fair verdict by raising their hands were later subjected to further questioning during individual voir dire. If the prospective jurors had not raised their hands, no questioning concerning bias was allowed. Following individual voir dire of eighty–four prospective jurors, a jury was empaneled.

Appellant claims that he was entitled to individually voir dire all prospective jurors. Pa.R.Crim.P. 1106(e) provides:

"In capital cases, the individual voir dire method must be used, unless the defendant waives that alternative. In non–capital cases, the trial judge shall select one of the following alternative methods of voir dire, which shall apply to the selection of both jurors and alternates:"

Pa.R.Crim.P. 3(d) defines a capital case as one "for which the death penalty may be imposed." Instantly, since the Commonwealth indicated it was not seeking the death penalty, the court selected one of the alternative methods for voir dire provided in the Rules.

Appellant concedes that the procedure used seems to be fair in eliciting responses about a possible bias or interest,

but he nonetheless argues that prospective jurors would be more willing to indicate bias during individual questioning as opposed to answering the same questions in front of a group of prospective jurors. We find no merit to appellant's argument.

In *Commonwealth v. Johnson*, 452 Pa. 130, 134, 305 A.2d 5, 7 (1973), the Court stated, " . . . [T]he examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury . . . ." The voir dire method followed did allow questioning which would disqualify prospective jurors who were either biased or lacked impartiality. Appellant's claim of prejudice, i. e. a greater unwillingness to admit bias in a group as opposed to an individual questioning, is speculative at best.

In *Commonwealth ex rel. Fitzpatrick v. Bullock*, 471 Pa. 292, 370 A.2d 309 (1977), the court held that a trial court lacked the authority to *sua sponte* hold a pretrial hearing to determine if the death penalty was involved in any given case. The court held that such a determination was a usurpation of the jury's function as set forth by the legislature. It must be remembered, however, that in *Bullock*, the Commonwealth objected to the proposed procedure. Instantly, the Commonwealth indicated it would not seek the death penalty and for that reason, *Bullock* may well be inapposite.

Furthermore, appellant was convicted of murder in the third degree. If appellant were entitled to a retrial, the retrial would clearly be a non–capital case since the double jeopardy provision in both the United States Constitution and our State Constitution would prohibit any conviction for murder of the first degree. In light of appellant's purely speculative claim of prejudice, any mere technical violation of appellant's right to individual voir dire is insufficient to warrant reversal.

■ Appellant next claims that the court committed reversible error in allowing and then refusing to strike the testimony of Samuel Tayoun. Mr. Tayoun testified that for

ten years his job had been to produce subpoenaed prison hospital records for court. On cross–examination, it was apparent that Tayoun was not the custodian of all prisoner records in the sense of physically guarding said records in the prison. However, he was intimately familiar with the record keeping process in doing his job of bringing the requested records into court.

The Uniform Business Records as Evidence Act provides: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the *custodian or other qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b. (Emphasis added.)

It is thus clear that Mr. Tayoun was a "qualified witness" as contemplated by the Act. Appellant's argument is meritless.

Appellant next claims the court erred in improperly restricting the closing remarks of appellant's counsel and accusing counsel, in the jury's presence, of misstating the law. In the first instance, counsel was defining murder of the first degree when the court intervened:

" . . . Excuse me, I'm obliged to interrupt. I prefer that you not give your idea of examples of what the various degrees of murder might be. I would rather have the Court do that. It is difficult enough for the jury to try to listen to the court's instructions on the various ·degrees of murder without inconsistent statements of counsel in their minds."

Counsel nevertheless defined the various degrees of murder as they arose in the factual context of this case. Appellant's argument is thus without merit.

In the second instance, defense counsel informed the jury:

" . . . But what he didn't tell you that under the law of this Commonwealth of Pennsylvania, a jury has a right

to find him guilty of a lesser degree even if you believe those facts have a right if you believe this is a case of first–degree murder, find him guilty of a lesser offense.

"THE COURT: All right, Mr. Shuman.

"MR. LUNKENHEIMER: Your Honor, I object to that.

"THE COURT: Mr. Lunkenheimer has just objected to what was said. Ladies and gentlemen, under the law the Supreme Court of Pennsylvania has indicated that the jury once it brings back a verdict has had the final word on whatever the offense is and that jury verdict will not be reversed if the jury agrees with the verdict which is less than a judge might consider the facts warranted. At the same time, judges are instructed to advise the jury of the various degrees and the jury is expected to apply the law and come back with whatever verdict the facts warrant. I think it is improper to state that a jury may render any verdict that it wants in a sense that it is discretionary with the jury. I think it is true only in the sense that if a jury does it, then there is nothing that can be done about it by the appellate courts. They won't order a new trial with the idea that a higher verdict would be correct."

 A jury, in its mercy, may bring back a conviction for a lesser degree of guilt than the evidence warrants. *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) (opinion in support of affirmance). In *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973), the court held that no need exists to inform the jury of its mercy dispensing powers. There is no part of the court's comment that is not legally correct. Appellant classifies the court's comments as an accusation that appellant's counsel misstated the law in front of the jury. The court, however, merely stated that it felt counsel's remarks were inappropriate under the circumstances. As the court correctly stated the law, we can find no reversible error in this portion of the case.

 Appellant next argues that the court erred in denying his request for a pretrial line–up. On June 7, 1976, the court was prepared to hear a motion, reserved for time of trial,

regarding the admissibility of Janice Berry's identification testimony. Defense counsel did not request a line–up until the Commonwealth had called Ms. Berry. While the court denied appellant's request as untimely, appellant was allowed to leave the courtroom when Ms. Berry testified, thus avoiding a one–on–one confrontation. Further, at time of trial, appellant was allowed to sit with five other young black men in the spectator section when Ms. Berry testified; she nevertheless immediately identified appellant as the individual who attacked her brother.

There are no Pennsylvania cases which grant a defendant the right to a line–up. In *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979), the court held that the trial court abused its discretion in refusing a pre–trial request for a line–up as to the *only eyewitness* to the crime who first identified the defendant at the defendant's certification hearing. We believe *Sexton* does not apply in the instant case. First, in the instant case, Ms. Berry identified appellant immediately and without police prompting after he was returned to the scene of the crime. Further, appellant was afforded opportunity to sit in the spectator section when Ms. Berry was first called on to identify appellant in court. Under these circumstances, appellant's contention is without merit.

■ Appellant finally claims that the trial court erred in refusing to charge on involuntary manslaughter. Initially, we note that the record contains no evidence from any source which in our view would support a verdict of involuntary manslaughter. Under these circumstances, our Supreme Court, as presently composed, has yet to resolve this issue. In *Commonwealth v. Hinson*, 485 Pa. 626, 403 A.2d 564 (1979), the court was equally divided. See also *Commonwealth v. Thomas*, 482 Pa. 312, 393 A.2d 1122 (1978). Since the appointment of Mr. Justice Flaherty provides the court with a seventh member to finally resolve this issue, we believe this issue alone should be transferred to the Supreme Court for resolution.

Case transferred to the Supreme Court for resolution of issue concerning the propriety of refusing to charge on involuntary manslaughter. Relief is denied in all other respects. Should appellant wish to file a petition for allowance of appeal from the portions of this opinion denying relief, said petition should be timely filed from the date of this order.