441 A.2d 1327

**COMMONWEALTH of Pennsylvania,**

**v.**

**Matthew FREEMAN, Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 1980.

Filed Feb. 26, 1982.

468

470

John L. Lachall, West Chester, for appellant.

Lee Ruslander, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

This is an appeal from judgments of sentence imposed after a Chester County jury convicted appellant, Matthew Freeman, of rape, involuntary deviate sexual intercourse, burglary and terroristic threats. On August 17, 1978, Georgette Eachus was allegedly raped and orally sodomized at knifepoint by a male she claimed to have met the previous day. Appellant, found that date in possession of a stolen vehicle,[1] was charged with the instant crimes on August 18, 1978. After the denial of appellant's suppression motions, a jury trial ensued at which appellant, testifying in his own defense, argued that his encounter with Ms. Eachus was consensual. Following his conviction, appellant raised, and the trial court rejected, myriad post-verdict claims, seven of which are also raised in this appeal. We consider them seriatim and affirm.

Appellant first challenges the suppression court's conclusion that he lacked standing to object to the search of the

1. Charges relating to the automobile theft were severed from the instant offenses pre-trial at appellant's request.

stolen car in which he was found.[2]  Two searches occurred here: the first was a warrantless search on August 17, 1978, during which police discovered, but did not seize, a knife; that knife was seized during a second search, conducted with a warrant, on August 18, 1978.  In this appeal, appellant objects to the court's ruling only as to the first search.  Essentially, appellant argues that the decision of United States Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) grants him standing to object to the search of the car in his possession on August 17, notwithstanding the fact that his possession of that car was unlawful.  He thus urges us to overturn the lower court's allegedly erroneous standing ruling and remand this case for purposes of determining the legality of the warrantless search.

Although not dispositive of the particular standing issue presented by this appeal, we find appellant's reliance on *Jones* to be inapposite.  The *Jones* court conferred "automatic standing" on defendants charged with possessory offenses and, alternatively, permitted anyone "legitimately on premises" to challenge the legality of a search therein.  The viability of *Jones*, however, was at best questionable at the time of appellant's suppression hearing.  The "automatic standing" doctrine of *Jones* was eroded, although not explicitly repudiated, in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and any residual significance of that rule was extinguished in *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).  Moreover, in *Rakas v. Illinois*, 439 U.S. 128, 142, 99 S.Ct. 421, 429, 58 L.Ed.2d 387, 400 (1978), *rehearing denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979), the Court rejected the second prong of *Jones* when it found that "the phrase 'legitimately on premises' . . . creates too broad a gauge for measurement of Fourth Amendment rights."  It is now settled that entitlement to the exclusionary rule will be available only to defendants able to demonstrate that their

2.  At no time during these proceedings has appellant disputed that he unlawfully possessed the car.

legitimate expectation of privacy was invaded by the allegedly illegal search and seizure. *See Commonwealth v. Sell*, 288 Pa.Super. 371, 432 A.2d 206 (1981) (adopting the *Salvucci-Rakas* test; defendant had no expectation of privacy when he placed firearms on a shelf commonly used by fellow employees as a storage area).

We find it difficult, if not impossible, to imagine a situation where one whose presence in an automobile is unlawful can have a legitimate expectation of privacy so as to entitle him to Fourth Amendment protection when that automobile is the object of a search. Although expressly not deciding whether appellant had standing to challenge the admissibility of physical evidence seized from a stolen truck, Judge Popovich, writing for the majority in *Commonwealth v. Prengle*, 293 Pa.Super. 64 n.3, 437 A.2d 992 at 994 n.3 (1981) noted ". . . because appellant's presence in the truck was unlawful, any claim to a reasonable expectation of freedom from government intrusion into a stolen vehicle would be ludicrous.

We need not, however, employ the *Salvucci-Rakas* analysis in order to conclude that the lower court properly determined that appellant lacked standing to object to the search of the stolen car in which he was found. The Supreme Court in *Rakas* made clear that, even under *Jones*, appellant would not have been permitted to challenge the lawfulness of the car search. In rejecting the holdings of the very cases which appellant herein cites as supporting authority, the court stated:

> The Court in *Jones* was quite careful to note that "wrongful" presence at the scene of a search would not enable a defendant to object to the legality of the search. 362 U.S. at 267, 80 S.Ct. 725 [at 734], 4 L.Ed.2d 697, 78 A.L.R.2d 233. The Court stated: "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. *This*

*would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.*" Ibid. (emphasis added). Despite this clear statement in *Jones*, several lower courts inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile. See, e.g., *Cotton v. United States*, 371 F.2d 385 (CA9 1967); *Simpson v. United States*, 346 F.2d 291 (CA10 1965).

439 U.S. at 141 n.9, 99 S.Ct. at 429 n.9, 58 L.Ed.2d at 399–400 n.9. Because the lower court's ruling is unassailable under both *Salvucci-Rakas* and *Jones*, we find appellant's claim to be meritless.

Appellant next contends that the suppression court erred in finding probable cause for the issuance of a search warrant pursuant to which his tan trousers were seized. State Trooper Richard O'Brien, the police affiant who obtained the warrant, based his probable cause claim on several factors: his conversation with the victim in the evening of August 17 during which she described the male who raped her that morning and his attire, most notably his tan trousers; his personal observation four hours later of appellant whose appearance seemed to match the description given by the victim; his further observation that appellant was wearing tan trousers; his information that appellant was wearing tan trousers when arrested by Schylkill Township police earlier on August 17; his knowledge, obtained from a Captain Brockett, that the tan trousers were presently being stored in the identification room at Chester County Prison Farms where appellant was incarcerated. Based on the foregoing information, Trooper O'Brien stated that he believed the trousers to be of possible evidentiary value in the rape investigation, thereby justifying the issuance of a warrant for their seizure.

Claiming the inadequacy of probable cause to search, appellant argues that (1) the warrant affidavit did not indicate facts supporting the affiant's belief that information provided by the victim and Captain Brockett was relia-

ble as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and (2) the victim's description of her assailant was too general to conclude that appellant was the same male.

While individual portions of the affidavit might not alone supply probable cause, we find that a consideration of the affidavit in its entirety, including the affiant's personal observations, supports the magistrate's issuance of the search warrant. *Commonwealth v. Edwards*, 493 Pa. 281, 290, 426 A.2d 550, 554 (1981) (statements of different informants may support each other when taken together). To dissect this affidavit in the manner urged by appellant would involve us in the type of hypertechnical evaluation which our courts have purposely long avoided. *See United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 689 (1965). Since a common-sense reading of the affidavit supports the conclusion that appellant was the victim's likely assailant and that his tan trousers were to be found at the Chester County Prison Farms, the court properly denied appellant's motion to suppress the evidentiary usage of the trousers. We further reject, as it is unsupported by the record, appellant's additional charge that the prison search was unlawfully executed.

In his third claim of error appellant contends that the trial court should have granted his request for individual voir dire to explore racial prejudices of the prospective jury panel. Appellant maintains that where, as here, a black defendant is accused of sex crimes against a white victim, individual voir dire is the only means by which to obtain racially impartial factfinders. We fail to find error in the court's refusal to allow individual questioning and, furthermore, cannot agree with the presumption of racial prejudice inherent in appellant's argument.

To secure a fair and impartial jury, a court may, in its discretion and in a non-capital case, grant the right to conduct individual voir dire of prospective jurors. Pa.R.

Crim.P. 1106(e); *Commonwealth v. Mayo*, 272 Pa.Super. 115, 119, 414 A.2d 696, 698 (1979); *Commonwealth v. Gore*, 262 Pa.Super. 540, 557, 396 A.2d 1302, 1310 (1978). Appellant has failed to present any concrete evidence that this case involved especial racial considerations which might best be dealt with through individual questioning. Additionally, he does not claim that the actual panel chosen was racially biased against him. Rather, although he admits that he was permitted by the court to probe any racial bias, he complains that the jurors were constrained by peer pressure implicit in collective voir dire to admit to such.

In *Commonwealth v. Walker*, 275 Pa.Super. 311, 316, 418 A.2d 737, 740 (1980), our court rejected a similar contention: "Appellant's claim of prejudice, i.e. a greater unwillingness to admit bias in a group as opposed to an individual questioning, is speculative at best." Under these circumstances, we cannot conclude that the trial of crimes involving defendants whose race differs from that of their alleged victims automatically triggers the need for individual voir dire or that such a ruling is more compelling in sexual prosecutions. Cf. *Commonwealth v. Shively*, 492 Pa. 411, 424 A.2d 1257 (1981) (sexual and non-sexual crimes must be treated alike in deciding whether evidence of prior criminal activity should be admitted).

■■■■ Appellant further contends that the court improperly admitted testimony by the victim that she reported the alleged rape to others and also statements by the victim's sister-in-law confirming that the victim related the incident to her immediately following its occurrence. The lower court held, and we believe properly so, that such testimony was admissible to show a "prompt complaint" of the alleged crimes. Of course, the fact that a victim made a prompt complaint is no longer required to sustain a rape conviction, See 18 Pa.C.S.A. § 3105. It is nonetheless competent evidence, properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged. *Commonwealth v. Green*, 487 Pa. 322, 328, 409 A.2d 371, 374 (1979); *Common-*

wealth v. Pettiford, 265 Pa.Super. 466, 468, 402 A.2d 532, 533 (1979); *Commonwealth v. Sanders*, 260 Pa.Super. 358, 365, 394 A.2d 591, 594 (1978). *See generally* 4 Wigmore, Evidence §§ 1134–1140 (Chadbourn rev. 1972). In keeping with this rule, our courts have disallowed "prompt complaint" testimony which has exceeded the permissible limits. *Commonwealth v. Green, supra*, (all encompassing statement by detective inadmissible since it goes beyond identifying complaint and its nature); *Commonwealth v. Pettiford, supra*, (court erred in admitting, as proof of "prompt complaint," testimony of three witnesses one of whom recounted the victim's rape in great detail). The challenged testimony of the victim and her sister-in-law, introduced solely to establish that Ms. Eachus immediately reported that she was raped, was neither detailed nor protracted.[3]

In a prosecution for rape, fresh complaints made by the alleged victim, consistent with her testimony at trial, benefit from a special evidential rule that makes evidence thereof admissible in the Commonwealth's case in chief. The rationale for this rule is best understood by reference to its background.

Evidence of the alleged victim's "hue and cry" following rape has long been admissible at common law. Hue and cry is thought to follow rape like smoke follows fire. Proof of the former is circumstantial evidence of the latter. Conversely, unexplained lack of evidence of hue and cry that one might expect to ensue from rape casts doubt on the existence of the rape itself.

Fresh complaints of rape, undetailed, are a particular form of hue and cry that provides significant circumstantial support for the alleged victim's subsequent testimony that she was raped. Such fresh complaints are classified evidentially as prior consistent statements.

**3.** We are not troubled by the fact that the victim's sister-in-law testified as to whom the victim identified as her assailant. Though evidence of identification of the defendant is beyond the scope of the special rule admitting fresh complaints, it is inconsequential in this case because an encounter between the prosecuting witness and appellant is not disputed. The issue at trial was whether or not it was consensual.

The general rule is that a prior consistent statement of a witness is admissible only after the witness' testimony has been attacked, expressly or impliedly, as recent fabrication. *See Commonwealth v. Gore*, 262 Pa.Super. 540, 549–550, 396 A.2d 1302, 1306–1307 (1978). However, in the special circumstances of a rape case the testimony of a woman that she was raped is automatically vulnerable to attack by the defendant as recent fabrication in the absence of evidence of hue and cry on her part. This justifies a special evidential rule permitting introduction of her fresh complaints in the prosecution's case in chief.[4]

■   Because evidence that fresh complaints were made by Ms. Eachus with respect to the rape with which the appellant is charged was offered as corroborative, not substantive, evidence, it is not hearsay. Thus, appellant's hearsay objection, which he did not voice at trial, but now makes on appeal, lacks merit. Appellant's objection that the evidence was self-serving is also without merit. That evidence is self-serving is not a ground for its exclusion.

■   Similarly meritless is appellant's fifth contention that the trial court should have declared a mistrial when the victim testified that she viewed appellant in a line-up on August 28, 1978, thereby impermissibly suggesting his involvement in other crimes.[5] The reference arose during questioning of the victim by the prosecutor regarding appellant's changed appearance on August 28, eleven days after the alleged rape. In his examination, the prosecutor was

4. If the alleged victim does not testify that she was raped, then evidence of her fresh complaints cannot corroborate such testimony and thus is not admissible under this special evidential rule. However, fresh complaints may sometimes qualify as excited utterances and be admitted as substantive evidence as an exception to the hearsay rule. See *Commonwealth v. Pettiford, supra.* Because of our disposition of this issue, we need not determine whether the herein testimony would also be admissible under the "excited utterance" exception to the hearsay rule.

5. Although appellant raised a post-verdict challenge to the suppression court's denial of his motion to suppress the victim's line-up identification on the grounds that the line-up was unduly suggestive, he has not made a similar claim in this appeal.

careful to avoid specific mention that the viewing occurred during the course of a line-up. After the victim mentioned the line-up, in an unresponsive answer, appellant made an objection which was immediately sustained. Appellant still contends that the mere reference to the line-up irrevocably prejudiced him and requires the grant of a new trial.

We do not agree that the passing mention of a line-up mandates reversal of appellant's conviction. Rather, the "controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *See Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972) (victim's viewing of police photographs of appellant). Here, the jurors had no reason to believe that appellant had participated in crimes other than the instant offense. Simply because the August 28 line-up was in fact held for purposes of possible identification of appellant in connection with unrelated offenses does not justify a conclusion that the jurors could have, or must have, inferred this from the victim's testimonial reference. Appellant got immediate relief when his objection was sustained following the remark and no further line-up mention was made. The court did not abuse its discretion in denying appellant's further request for a mistrial.

Appellant's sixth contention is that, before the jury began its deliberations, the court should have instructed them pursuant to the American Bar Association Standards Relating to Trial by Jury which were adopted by the Pennsylvania Supreme Court in *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971).[6] That charge is appropriately

6. Standard 15–4.4 of the American Bar Association Standards for Criminal Justice, *Trial by Jury*, approved August 9, 1978, provides:
Standard 15–4.4. Length of deliberations; deadlocked jury
(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:
(i) that in order to return a verdict, each juror must agree thereto:
(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

given only when juries are deadlocked and also when the court determines, in its discretion, that such a charge would not be unduly coercive. *Commonwealth v. Santiago*, 492 Pa. 297, 303–304, 424 A.2d 870, 873 (1981). The coerciveness which might arguably surround a *Spencer* charge could only increase if it were to be given prior to any deliberations at all. Since appellant's request for a *Spencer* charge was prematurely proffered, it was properly refused.

 Finally, appellant protests the court's refusal to grant two of his requested points for charge. One, regarding the resolution of two equally reasonable yet inconsistent explanations, was covered by the court's instructions on the credibility of witnesses and the Commonwealth's burden of proof. Where the substance of the requested charge is adequately and clearly conveyed, the court's failure to give the verbatim instruction offered by appellant is not error. *Commonwealth v. Rhem*, 283 Pa.Super. 565, 576–77, 424 A.2d 1345, 1351 (1980). Nor did the court err in failing to instruct the jurors that appellant, who testified in his own defense at trial, was under no legal obligation to have done so. Appellant's proposed charge would have been tantamount to suggesting to the jurors that they draw a favorable inference from his election to take the stand. While no adverse inference can be drawn from appellant's failure to testify,

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

there is no concomitant principle which supports appellant's theory.

Judgment of sentence affirmed.