J-S37004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHEEM MORRISON | : | |
| | : | |
| Appellant | : | No. 2054 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006606-2021

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 26, 2024**

Raheem Morrison, Appellant, appeals from the judgment of sentence of 15 to 30 years' incarceration and a consecutive period of three years' probation, imposed following a bifurcated, two-day bench trial before the Honorable Kai Scott.[1] Appellant was convicted of ten crimes, all of which related to the sexual abuse of his biological daughter. We affirm.

The victim, K.W., was 11 years old at the time of trial. She testified that she was not close to Appellant growing up, but began visiting him on

---

[1] Judge Scott did not file a formal written opinion as she was appointed to the United States District Court for the Eastern District of Pennsylvania. On January 13, 2023, Judge Scott filed a letter brief following her confirmation, but prior to President Biden's signing her commission, which was expected to be within days of the filing. We appreciate the trial court's diligence and will refer to this document, which is rather comprehensive given the circumstances, as the Trial Court Opinion (TCO).

weekends beginning in October of 2021, when she was 10 years old.[2]  The abuse began shortly thereafter.  The first incident that she could recall occurred in Appellant's car.  Appellant asked K.W. if she wanted to drive and put her on his lap.  He then unzipped her pants and put his finger on her vagina.  In another incident, Appellant called her into a room and asked if she wanted to "see his private part[.]"  N.T., 2/23/22, at 26.  K.W. was too scared to say no.  Appellant then told her to put her mouth on his penis.  On another occasion, Appellant waited for K.W. to finish showering and told her to come to his bedroom.  He then took her towel, placed her on the ground, and began licking her vagina.  K.W. disclosed the abuse to her mother[3] via text message on January 14, 2021.

Mother and Appellant had an antagonistic relationship.  Mother testified that she began allowing K.W. to visit Appellant in October of 2020, partly due to pressure from her boyfriend and her family members.  *See id.* at 79 ("But I had my grandmom and I had my boyfriend in my ear saying if [Appellant] want[s] to be a father, allow him to be a father….").  She described the text message from K.W. as saying "dad['s] been touching me."  *Id.* at 80.  Mother consulted her mother, D.W., and then drove home to speak to K.W., who disclosed more details.  K.W. stated that she wanted to go to the police, and

_____

[2] K.W. testified that the visits began in October of 2021.  As discussed elsewhere, other witnesses testified that those visits began in 2020, and authorities were informed of the abuse in January of 2021.

[3] K.W.'s mother's first name also begins with K.  To avoid confusion, we will refer to her as Mother.

Mother transported her to the local police station. Subsequently, K.W. was given a medical examination and later sat for a forensic interview with Jillian Shainman, a forensic interviewer employed by Philadelphia Children's Alliance. The Commonwealth introduced a videotape of that interview into evidence.

Appellant was convicted of all charges and sentenced on June 22, 2022, to the term previously stated. On July 5, 2022, he filed a timely post-sentence motion.[4] Following the denial of the motion, Appellant filed a timely notice of appeal and complied with the court's order to file a concise statement pursuant to Pa.R.A.P. 1925(b). The trial court filed its opinion, **see** footnote 1, **supra**, and the matter is ready for review of Appellant's eight claims:

> 1. Whether the verdict of guilty of all ten convicted offenses … is based on insufficient evidence where there is a lack of evidence to show beyond a reasonable doubt that there was any sexual or other criminal activity between Appellant and [K.W][.]
>
> 2. Whether the verdict in this matter was against the weight of the evidence where there was a lack of physical evidence in a case where physical evidence would have been present; there was evidence of adult manipulation by … [M]other of [K.W.] and her motive for doing so given her bias against Appellant; and the credibility concerns of [K.W.,] including her inability to recall key details[.]
>
> 3. Whether the [c]ourt erred and abused its discretion by sustaining the Commonwealth's relevance objection when defense asked the complaining witness on cross-examination whether she knew [Appellant] did not have a license to drive[.]

---

[4] The tenth day was Saturday, July 2. Monday, July 4, was a legal holiday. The filing is therefore timely. 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

4. Whether the [c]ourt erred and abused its discretion by overruling … [Appellant]'s hearsay and relevance objection regarding prior statements made by [K.W][.]

5. Whether the [c]ourt erred and abused its discretion by sustaining the Commonwealth's relevance objection when defense attempted to elicit testimony regarding the parenting of [Mother.]

6. Whether the [c]ourt erred and abused its discretion by admitting a copy of the forensic interview from Philadelphia Children's alliance into evidence, over defense objection[.]

7. Whether the [c]ourt erred and abused its discretion during sentencing by failing to adequately consider the mitigating characteristics and cooperative nature of Appellant in fashioning a sentence[.]

8. Whether the [c]ourt erred and abused its discretion during sentencing by considering remarks by the Commonwealth and making remarks itself that the complaining witness' behavior was consistent with that of a sexual abuse victim[.]

Appellant's Brief at 11-13.

**I.**

Sufficiency of the evidence

Appellant initially challenges the sufficiency of the evidence with respect to all ten convictions. The trial court concluded that Appellant failed to preserve this issue. We agree. Appellant's original Rule 1925(b) statement stated, with respect to his sufficiency challenge, that the Commonwealth failed to "prove some or all of the elements of the ten charges…." Concise Statement, 8/12/22, at 1 (unpaginated). Appellant then sought permission to amend the statement, explaining that, while his "contention is that no sexual assault took place, undersigned counsel feels it would be best to amend the statement to discuss the specific relevant element from each of the ten

counts…." Motion for Permission to Amend, 8/29/22, at 3-4 (unpaginated). The trial court granted the request, and opines that the amendment did not cure the defect, as it merely separated "all ten of [Appellant]'s convictions into 11 separate paragraphs, noting only that 'there was insufficient evidence to show that [Appellant] [insert criminal conduct here].'" TCO, 1/13/23, at 2 (third bracketing in original). We agree with the trial court that this "is no more specific than saying that the evidence was insufficient for his conviction." *Id.* Indeed, Appellant's brief carries forward that defect, as illustrated by his argument in support of this claim:

> With regards to the charge of Rape of a Child under 18 [Pa.]C.S. § 3121(c), there was insufficient evidence to prove beyond a reasonable doubt that sexual intercourse occurred between the complaining witness and Appellant. With regards to the charge of Involuntary Deviate Sexual Intercourse under 18 [Pa.]C.S. § 3123(b), there was insufficient evidence to prove beyond a reasonable doubt that deviate sexual intercourse occurred between the complaining witness and Appellant. With regards to the charge of Statutory Sexual Assault under 18 [Pa.]C.S. § 3122.1(b), there was insufficient evidence to prove beyond a reasonable doubt that sexual intercourse occurred between the complaining witness and Appellant. With regards to the charge of Sexual Assault under 18 [Pa.]C.S. § 3124.1, there was insufficient evidence to prove beyond a reasonable doubt that sexual intercourse or deviate sexual intercourse occurred between the complaining witness and [Appellant]. With regards to the charge of Incest under 18 [Pa.]C.S. § 4302(a), there was insufficient evidence to prove beyond a reasonable doubt that sexual intercourse occurred between the complaining witness and Appellant. With regards to the charge of Endangering Welfare of Children - Parent/Guardian/Other Commits Offense under 18 [Pa.]C.S. § 4304(a)(1), there was insufficient evidence to prove beyond a reasonable doubt that … Appellant endangered the welfare of a child, *i.e.*[,] the complaining witness. With regards to the charge of Corruption of Minors by Defendant Age 18 or Above under 18 [Pa.]C.S. § 6301(a)(1)(ii), there was insufficient

evidence to prove beyond a reasonable doubt that a course of conduct in violation of Chapter 31 (relating to sexual offenses) occurred between … Appellant and the complaining witness. With regards to the charge of Indecent Exposure under 18 [Pa.]C.S. § 3127(a) – Indecent Exposure, there was insufficient evidence to prove beyond a reasonable doubt that Appellant exposed his genitals. With regards to the charge of Indecent Assault on Person Less than 13 Years of Age under 18 [Pa.]C.S.[]§ 3126(a)(7), there was insufficient evidence to prove beyond a reasonable doubt that any indecent contact took place between Appellant and the complaining witness. With regards to the charge of Recklessly Endangering Another Person under 18 [Pa.]C.S. § 2705, there was insufficient evidence to prove beyond a reasonable doubt that Appellant recklessly endangering the complaining witness and/or put her in danger of death or serious bodily injury.

Appellant's Brief at 22-24.

To preserve a sufficiency challenge, the concise statement must offer more than a boilerplate assertion that the evidence was insufficient to convict. In **Commonwealth v. McCree**, 857 A.2d 188 (Pa. Super. 2004), the appellant's concise statement "raise[d] a sufficiency of the evidence claim by stating that '[t]here was insufficient evidence to sustain the verdict of guilt beyond a reasonable doubt.'" **Id.** at 192 (quoting concise statement; second bracketing in original). We stated that "such language is too vague to permit review." **Id.** However, we declined to find that the issue was waived because the appellant was convicted of only one count of possessing drugs with the intent to deliver, and as he did not contest physical possession, it was obvious from the proceedings that he challenged only one element. We explained that, "[b]ecause the trial court was aware the issue of intent was the only issue that [the] appellant could possibly appeal, we [found] that [the]

appellant's statement sufficiently identified the issue involved." *Id.* at 192-93.

Unlike **McCree**, Appellant was convicted of several crimes, and it is not obvious what element(s) he wishes to challenge. For example, Appellant challenges the Rape of a Child conviction on the grounds that "there was insufficient evidence to prove beyond a reasonable doubt that sexual intercourse occurred between the complaining witness and Appellant." Appellant's Brief at 22. We note that the crime is defined as "engag[ing] in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). The phrase "sexual intercourse" is defined as: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. We observe that the term "per os" does not include digital penetration, but does include oral intercourse. **Commonwealth v. Kelley**, 801 A.2d 551, 555 (Pa. 2002). It is not this Court's duty to go through each crime, examine applicable caselaw, and determine whether the Commonwealth's evidence satisfied the elements. Appellant's amended statement did not discuss the Commonwealth's evidence, and he fails to argue why the evidence, when viewed in light most favorable to Commonwealth as the verdict winner, was insufficient. We therefore agree with the trial court that Appellant failed to preserve any sufficiency challenge.

## II.

### Weight of the evidence

Appellant's second claim challenges the weight of the evidence. Our standard of review is well-settled:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (footnote and citations omitted).

Appellant's argument in support of finding an abuse of discretion claims "there was: (i) overwhelming evidence to show the complaining witness was coached by her mother to bring these allegations against Appellant; and (ii) there were credibility concerns of the complaining witness given inconsistencies in her testimony and an inability to recall key details." Appellant's Brief at 25.

Appellant offers little more than an argument that we should review the testimony *de novo*. He argues that Mother "made clear during her testimony she harbored animosity towards Appellant." *Id.* He also cites K.W.'s testimony that she had only recently begun using the word "coochie" to refer

to her vagina, which, in his view, suggests coaching. Finally, Appellant points to Mother's testimony that K.W.'s initial disclosures were "in stark contrast to the graphic allegations K.W. would later report…." *Id.* at 25-26. Appellant argues that Mother "may have influenced her daughter's claim to be more egregious and criminal." *Id.* at 26.

As our Supreme Court has observed, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). Additionally, in ruling on the weight claim, the trial judge does "not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Widmer*, *supra* at 752. We acknowledge that this concept is difficult to apply in a bench trial, where the judge served as the jury. *Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023) ("Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience."). However, Appellant must still show an abuse of discretion. *Id.*

Presently, Appellant fails to explain how the trial court abused its discretion pursuant to the relevant standards of review. Instead, Appellant

merely relitigates the underlying question of whether the weight of the evidence supports the verdict and invites us to make a credibility determination. Our decision in **Commonwealth v. Rogers**, 259 A.3d 539 (Pa. Super. 2021), which involved a weight claim in a non-jury proceeding, establishes that, even in non-jury cases, we may not act as the thirteenth juror.

> Rather than claim an abuse of discretion, Rogers argues to us *de novo* that the verdicts were against the weight of the evidence, *i.e.*, that the witnesses lacked credibility, and that the trial court's verdicts were highly speculative. Accordingly, Rogers does not contend, much less persuade us, that the trial court overrode the law; made a manifestly unreasonable decision; or was motivated by bias, prejudice, or ill will.

*Id.* at 541-42 (internal quotation marks and citation omitted).

The same point applies here. Appellant simply asks us to override the trial court's credibility determinations, which we cannot do. He therefore fails to show that the trial court abused its discretion in declining to find its verdict shocked its own conscience.

In any event, we observe that the trial court cogently explained why Mother's animosity towards Appellant did not detract from K.W.'s credibility. While we would not have the benefit of these findings in a jury case, the trial court's findings and the inferences drawn therefrom clearly establish that the trial court did not abuse its discretion in rejecting Appellant's weight claim. When delivering its verdict, the trial court explained why it disagreed with Appellant's "custody" theory, as follows:

And I understand [Appellant]'s position as it relates to the motive, or at least the motive that they're suggesting may lie here with [Mother], and that there is this … custody issue. But, frankly, I don't buy it.

. . . .

[I]t was very clear that there was no love lost between [Mother] and [Appellant]. [D.W.] also testified about how they were oil and water, but despite what [Mother] felt about him, apparently she listened to her mom – and listened to her daughter, more importantly, who wanted to spend time with [Appellant], wanted to spend time with her siblings, and allowed, despite her feelings, her daughter to spend time with [Appellant]. And, so, if she wanted to keep [K.W.] away from her dad, she simply would not have reached out to him to begin with, and would not have allowed her to go visit him, but she did.

N.T., 3/18/22, at 96-97. Thus, based on the foregoing, Appellant's weight challenge lacks merit.

## III.

### Evidentiary rulings

Appellant's third through sixth claims all involve evidentiary rulings.

Our standard of review with respect to evidentiary rulings has been long established: The trial court's rulings will not be disturbed absent an abuse of discretion. *See Commonwealth v. Thompson*, 779 A.2d 1195, 1200 (Pa. Super. 2001). The trial court abuses its discretion if "it misapplies the law or [rules] in a manner lacking reason." *Commonwealth v. Rega*, 856 A.2d 1242, 1244 (Pa. Super. 2004) (citation omitted).

*Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006) (citation omitted; bracketing in original).

Appellant's first evidentiary challenge concerns a ruling during cross-examination of K.W. Appellant asked K.W. if she was aware that Appellant's driver's license was suspended. The trial court agreed with the

- 11 -

Commonwealth that this question was irrelevant, as lacking a license does not preclude someone from driving.

Appellant argues that the trial court abused its discretion because the question was relevant to his defense, since K.W. testified that Appellant fondled her in a vehicle after driving. Thus, in terms of relevancy principles, the fact that Appellant did not have a driver's license would make it more likely that he would not have been driving, which in turn suggests that K.W. was not a credible witness. Pa.R.E. 401(a) (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence"). We agree with the trial court that Appellant's licensing status was irrelevant with respect to K.W.'s testimony. Whether she knew or did not know of his status makes no difference. Had K.W. testified that Appellant showed her his driver's license, this line of impeachment would be relevant. But K.W.'s testimony did not address, in any way, whether Appellant was licensed to drive. She merely stated that Appellant sexually abused her while she was a passenger and Appellant was the driver. The trial court therefore correctly sustained the Commonwealth's objection to relevancy.[5]

Appellant's next evidentiary challenge, set forth in his fourth issue on appeal, asserts that the trial court erred in admitting a statement from K.W.

---

[5] The trial court agreed that the evidence itself was relevant, just not K.W.'s knowledge thereof. The trial court permitted Appellant to introduce the fact his license was suspended through the testimony of his wife.

to her grandmother, D.W. Over objection, D.W. testified that sometime in December of 2020, K.W. approached D.W. "in the kitchen, and she says, [']Grandmom, my daddy touched my butt.[']" N.T., 3/18/22, at 10. D.W. asked, "[']Was it, like, in a nasty, flirtatious way?['] She said, [']Yes. He thought I was sleeping.[']" *Id.*

The Commonwealth argued that the statements were admissible as a prompt complaint, and the trial court agreed. On the record before us, we do not agree that this disclosure qualified as a prompt complaint. However, we agree that the evidence was admissible as a prior consistent statement, which forms the basis for the "prompt complaint" exception and affirm on that alternative basis. *Commonwealth v. Edwards*, 903 A.2d 1139, 1157 n.19 (Pa. 2006) ("We may affirm a trial court's evidentiary ruling if we deem it to have been correct on grounds other than those specified by the court itself, particularly where the additional reason is apparent from the record.").

Pennsylvania Rule of Evidence 613 governs the admission of prior consistent statements, which are admissible for purposes of rehabilitation and not the truth of the matter asserted therein. In relevant part, Rule 613 provides:

> **(c) Witness's Prior Consistent Statement to Rehabilitate**.
> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose…[.]

Pa.R.E. 613(c)(1).

"Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged." **Commonwealth v. Hutchinson**, 556 A.2d 370, 372 (Pa. 1989). Thus, prior consistent statements are not ordinarily admissible in the Commonwealth's case-in-chief. A "prompt complaint" is an exception to this rule. "The rationale behind prompt complaint is that a rape victim would complain at the first opportunity where she felt safe." **Commonwealth v. Bryson**, 860 A.2d 1101, 1104 (Pa. Super. 2004) (*en banc*). A "prompt complaint" is admissible prior to any impeachment because of the expectation that "[h]ue and cry … follow rape like smoke follows fire." **Commonwealth v. Freeman**, 441 A.2d 1327, 1332 (Pa. 1982). Thus, an "unexplained lack of evidence of hue and cry that one might expect to ensue from rape casts doubt on the existence of the rape itself." **Id.** Therefore, the prosecution may admit such evidence in its case-in-chief.

However, the "prompt complaint" subset of the prior-consistent-statements exception typically applies to a discrete incident, such as when a rape victim seeks help from a bystander. Moreover, the contents of the statements cannot "exceed[ ] the permissible limits" of the exception. **Id.** Thus, the Commonwealth cannot introduce statements that go into "great

- 14 -

details" of the crime, nor does the exception apply if a long period of time has elapsed. *Id.* ("Fresh complaints of rape, undetailed, are a particular form of hue and cry that provides significant circumstantial support for the alleged victim's subsequent testimony that she was raped.").

Here, it is unclear how much time elapsed between Appellant's groping K.W.'s buttocks and when K.W. disclosed the incident, as D.W. testified only that the conversation occurred sometime in December of 2020. In *Commonwealth v. Bryson*, 860 A.2d 1101 (Pa. Super. 2004), we held that a disclosure made 30 hours after the attack was admissible as a prompt complaint. The rape victim was "a mentally disabled young woman" and did not disclose the incident until the next day. We noted that "the determination of whether or not a complaint was prompt is entirely dependent on the facts of the individual case." *Id.* at 1105. While K.W.'s age is certainly a relevant factor in this assessment, the lack of any detail concerning when the underlying groping occurred precludes admission of the prompt complaint exception.[6]

However, we affirm the trial court's ruling on the alternative basis that the prior statements were admissible to rehabilitate K.W. in light of Appellant's impeachment. As demonstrated by Appellant's first two issues, he asserted that Mother influenced K.W. to make the allegations against Appellant due to Mother's animosity towards him. As Appellant states in his brief, he alleges

---

[6] At trial, K.W. stated that she did not recall Appellant's fondling her buttocks and did not testify to this conversation.

that Mother, who first became aware of the allegations on January 14, 2021, influenced K.W. between that date and subsequent interviews with the authorities. Thus, K.W.'s disclosures in December of 2020, which preceded Mother's knowledge in January of 2021, arose before the alleged motive to fabricate. ***Commonwealth v. Handfield***, 34 A.3d 187, 209 (Pa. Super. 2011) ("[A] prior consistent statement is admissible only if it is made before the declarant has a motive to fabricate."). As Appellant raised a motive to fabricate based on Mother's alleged interference, the statements by K.W. to D.W. preceding the existence of that motive were admissible to rehabilitate her credibility pursuant to Rule 613(c).[7]

In Appellant's next evidentiary issue, he contends that the trial court erred in sustaining the Commonwealth's objections to questions concerning the parenting of K.W. We quote in full Appellant's argument:

> During [D.W.]'s testimony, she was asked about [Mother]'s parenting of K.W. [N.T., 3/18/22,] at 20. Initially, the witness was given latitude by the [c]ourt to discuss this issue. ***Id.*** The witness testified that she was concerned about [Mother's] not allowing Appellant to see K.W. and even supported Appellant in getting partial custody of K.W. in December 2020. ***Id.*** at 20-22.

---

[7] Appellant's brief addresses matters beyond the scope of his limited trial objection. The initial objection concerned D.W.'s testifying to a conversation in December of 2020. Later, the Commonwealth asked D.W. about conversations between herself and K.W. that took place on January 14, 2021, after K.W. disclosed the abuse to Mother. Appellant's brief argues that D.W.'s response improperly discussed K.W.'s stating that Appellant, among other things, told her to perform oral sex. Appellant did not object to those statements, and thus he has waived any argument as to those conversations. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

However, during the end of the witness' cross, the [c]ourt, by sustaining Commonwealth's relevance objections, decided to cut off any additional testimony regarding [Mother]'s parenting of K.W. *Id.* at 26-27. All of this evidence goes directly to support the defense's theory that [Mother] harbored animosity towards Appellant, that she was scared he was going to get partial custody, and, as a result, [she] manipulated … K.W. into making these allegations. Any evidence of unfit parenting would go directly to support that motive argument and should have been considered by the [c]ourt.

Appellant's Brief at 30-31.

In the cited pages of the transcript, Appellant asked D.W. on cross-examination, "were you unhappy with the way that [Mother] was parenting [K.W.]?" N.T., 3/18/22, at 20. The trial court overruled the Commonwealth's objection, and D.W. replied that she was concerned with Mother's not permitting K.W. to see Appellant, expressing the view "that a dad should be a part of every child's life." *Id.* Later, Appellant asked, "Was there an issue where [Mother] was leaving her children at home alone?" *Id.* at 26. The trial court sustained the Commonwealth's relevancy objection. Appellant then asked, "Did you have any other issues with how [Mother] was parenting?" *Id.* at 27. The Commonwealth again objected, which was sustained. Appellant did not further probe the issue.

The trial court opinion states that "it was abundantly clear to the [c]ourt from the first full day of testimony that the defense theory at trial was that [Mother] influenced [K.W.] to make up lies about [Appellant] … based on her ongoing issues with [Appellant]." TCO at 5. The trial court stated it "did not

need to hear additional[,] third[-]hand information about those issues through [D.W].” *Id.*

We agree that D.W.'s opinion of Mother's parenting was irrelevant. We accept that the fear of a potential custody action initiated by Appellant would supply a motive for Mother to influence K.W. However, Appellant does not explain why D.W.'s opinions on Mother's parenting would be relevant to that point. We therefore affirm on the alternative basis that the evidence was irrelevant.[8]

The final evidentiary issue challenges the trial court's decision to permit the Commonwealth to introduce and play the videotaped interview between K.W. and a forensic interviewer from the Philadelphia Children's Alliance. Appellant argues that the trial court's ruling conflicts with ***Commonwealth v. Bond***, 190 A.3d 664 (Pa. Super. 2018). We conclude that ***Bond*** is distinguishable.

As necessary context for resolving this claim, the Commonwealth filed on July 20, 2021, a notice of intent to introduce the video under the Tender Years Hearsay Act, 42 Pa.C.S. § 5985.1. That statute permits the introduction of hearsay statements, such as the ones contained on the videotaped forensic interview at issue here, “made by a child victim or witness, who at the time

---

[8] The trial court opinion implicitly accepts that Mother's opinion was relevant, as it “did not need to hear” additional evidence on that point. Thus, the trial court opinion alludes to the evidence being relevant but excludable on other grounds. ***See*** Pa.R.E. 403 (“The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following … wasting time, or needlessly presenting cumulative evidence.”).

the statement was made was 16 years of age or younger," provided that the trial court "finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability[.]" 42 Pa.C.S § 5985.1(a)(1)(i-ii). Those statements are admissible for their substance.

In **Bond**, we held that the trial court erred by permitting the Commonwealth to introduce a forensic interview as a prior consistent statement, which, as previously stated, are admissible only for rehabilitative purposes. Consistent with our discussion *supra*, the **Bond** Court held that the videotaped interview in that case was not a prior consistent statement, as the interview took place after the authorities were informed of the allegations. We observed, "[w]hile the [i]nterview [v]ideo antedated [the c]hild's cross-examination at trial, it did not antedate the alleged motive to lie, which … [the a]ppellant claims arose before she first complained of the assault. Put simply, [the c]hild's statements in the [i]nterview [v]ideo were not 'made before' the alleged fabrication, as Rule 613(c)(1) expressly requires." **Id.** at 670.

Appellant is correct that the forensic interview would not be admissible under Rule 613, as it too was made after the asserted motive to lie arose. However, Appellant fails to recognize that **Bond** explicitly did not discuss the Tender Years Hearsay Act. **Id.** at 669 n.3 ("The Commonwealth did not rely on the Tender Years Act in this case."). **Bond** is thus inapposite, and Appellant did not raise any objection to the admission of the evidence under Section 5985.1.

**IV.**

<u>Sentencing issues</u>

Appellant's final two claims concern the discretionary aspects of his sentence, which are not appealable by right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). Appellant must satisfy each of the following four criteria:

> (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006).

The Commonwealth contends that Appellant failed to present a substantial question. We agree. Whether an appellant raises a substantial question is evaluated on a case-by-case basis. ***See Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa. Super. 2005). Appellant cites two reasons his argument constitutes a substantial question. First, Appellant claims that his sentence is "unreasonable and manifestly excessive given that the [s]entencing [c]ourt failed to adequately account for the history and characteristics of [Appellant]." Appellant's Brief at 32. Separately, Appellant contends that the trial court "made findings that [K.W.]'s behavior was consistent with that of a sexual abuse victim absent any evidence on the record supporting such a conclusion." ***Id.*** at 32-33.

Generally, an appellant "must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process" to present a substantial question. ***Commonwealth v. Pass***, 914 A.2d 442, 446 (Pa. Super. 2006). To determine whether Appellant has presented a substantial question that the trial court's sentence was inconsistent with the Sentencing Code or contrary to fundamental norms, we begin by comparing the sentence to the applicable guidelines. ***See Commonwealth v. Moury***, 992 A.2d 162, 175 (Pa. Super. 2010) (holding that the appellant's claim of failure to consider aggravated mitigating circumstance did not present substantial question because, in part, the sentence fell within the low end of the standard range). Appellant received a period of incarceration of 10 to 20 years' for Rape of a Child, and a consecutive period of 5 to 10 years' incarceration for Involuntary Deviate Sexual Intercourse.[9] Rape of a Child under thirteen years of age carries an offensive gravity score of 14. When paired with Appellant's prior record score of 5, the standard guidelines called for a sentence of 192 months (16 years) at the low end. Appellant's aggregate sentence is thus in the mitigated range.

Therefore, Appellant's sentence is not inconsistent with the Sentencing Code or fundamental sentencing norms, especially considering the severity of the crimes involved. His aggregate sentence is in the mitigated range for Rape of a Child, and the trial court could have imposed consecutive periods of

---

[9] At all other counts, Appellant received either concurrent probation or no further penalty.

incarceration at other counts. Appellant's claim that the trial court did not take into account mitigating factors is belied by the fact the court stated that it considered, *inter alia,* the pre-sentence report, arguments of counsel, and Appellant's rehabilitative needs. N.T., 6/22/22, at 43. Therefore, as in **Moury**, Appellant's complaint is simply that he disagrees with the trial court's weighing of the factors. However, "[t]hat the court refused to weigh the proposed mitigating factors as [the a]ppellant wished, absent more, does not raise a substantial question." **Moury**, 992 A.2d at 175.[10]

Turning to the second attempt to raise a substantial question, Appellant argues that the court violated sentencing norms by remarking that K.W.'s behavior was consistent with that of a sexual abuse victim. Appellant misconstrues the nature of those comments. The relevant exchange occurred shortly after the parties finished their arguments at sentencing:

> And so, [Commonwealth], while you spoke about, of course, what the details were, I also looked at my notes to review the details that – that I wrote down. And as I said, at the time of – the time I gave my verdict in this case, the child, [K.W.], I found to be extremely credible, her details, what she talked about, what she said about what happened to her, the consistency in the details that she gave to me, as well as to law enforcement.
>
> It was clear to me, or at least in my findings, it's my belief that she had experienced this. And based on what I heard now from [Mother] and the after[-]effects, it's even more clear to me based

---

[10] The trial court concluded that Appellant waived this claim because his post-sentence motion merely stated that the court "failed to adequately consider the characteristics and cooperative nature of [Appellant] in fashioning a sentence" instead of citing specific mitigating factors. Post-Sentence Motion, 7/5/22, at 4 (unpaginated). We agree that Appellant failed to preserve this issue and therefore failed to invoke our jurisdiction for this reason, as well.

on the feelings of the child who now feels isolated or is isolated herself.  Some of the behavior that she's engaging in, which is consistent with individuals who have been sexually abused, and all that she's unfortunately going through.

I'm glad to hear, [Mother], that you are putting her in therapy.  I wish it had happened, frankly, even closer to the time of these incidents, closer to the time of arrest, because she could benefit from it.  And, hopefully, you'll keep her in therapy as long as necessary for her to get the full benefit of that therapy, no matter how long that is.

N.T., 6/22/22, at 39-40.

It is clear from this context that the trial court was simply summarizing the history of the case.  The trial judge merely expressed, in an offhand fashion, that K.W. was experiencing ongoing, adverse consequences due to Appellant's criminal acts.  Even if we credit the notion that the trial court is precluded from considering the effects of Appellant's crimes regardless of whether they were consistent with sexual abuse victims in general, ***but see*** 42 Pa.C.S. § 9721 (specifying that the trial court shall consider "the gravity of the offense as it relates to the impact on the life of the victim"), the fact remains that nothing in this exchange establishes that the trial court did so. Appellant has therefore failed to present a substantial question regarding his sentence, and has failed to invoke our jurisdiction.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/26/2024