J-S25012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EZAIS QUILES | : | |
| | : | |
| Appellant | : | No. 1875 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001826-2019

BEFORE:  PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED AUGUST 4, 2025**

Ezais Quiles appeals from the judgment of sentence entered on February 10, 2023, for his convictions of attempted involuntary deviate sexual intercourse with a child, unlawful contact with minor, corruption of minors, endangering welfare of children, and indecent assault.[1] Quiles challenges the verdict as against the weight of the evidence, asserts the trial court erred in failing to give a prompt complaint jury instruction, and argues the Sex Offender Registration and Notification Act ("SORNA")[2] is facially unconstitutional. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

---

[1] 18 Pa.C.S.A. §§ 901(a), 6318(a)(1), 6301(a)(1)(i), 4304(a)(1), and 3126(a)(7), respectively.

[2] 42 Pa.C.S.A. §§ 9799.10-9799.75.

## FACTUAL BACKGROUND

In late summer or fall of 2017, [] Quiles was showering with his sons, E.Q. and J.Q. While showering, [] Quiles brought his penis close to E.Q's face, and instructed him to "suck it." During this exchange, [] Quiles' penis touched the outside of E.Q.'s cheek and mouth. [] Quiles threatened to hit E.Q. with a belt if he did not perform oral sex. When E.Q. refused, [] Quiles hit him with a belt on his buttocks, leaving "little red marks." J.Q. witnessed the whole encounter. E.Q. was 7 years old at that time, and J.Q. was 6 years old.

During that time, E.Q. and J.Q. were residing with foster parents, [] Barbara Ginorio [("Ginorio")] and her husband, Raphael. Prior to visiting his father, E.Q. expressed a desire to live with [] Quiles and expressed frustration that [] Quiles was not doing enough to get him back. Around the time of the offense, [] Ginorio noted that E.Q.'s behavior changed, and he did not want to go to [] Quiles' house.

In November 2017, [] Ginorio heard the boys arguing in the bathroom. She intervened, and J.Q. explained that E.Q. asked him to "suck his wee-wee." J.Q. further explained that he was not going to do "the same thing E.Q. did to [] Quiles." [] Ginorio pulled E.Q. aside and inquired further. At first E.Q. denied that his father did anything to him, but when she pressed him, he disclosed the encounter with his father. [] Ginorio reported the matter to authorities. E.Q. and J.Q. were each separately interviewed at the Philadelphia Children's Alliance (PCA) on December 28, 2017. In E.Q.'s interview he recounted that [] Quiles brought his penis close to his face in the shower and instructed him to "suck it." He also recounted that [] Quiles hit his buttocks with a belt because he did not acquiesce to his father's demand. In J.Q.'s separate interview, he described the incident occurring between [] Quiles and E.Q. At the time of the PCA interviews, E.Q. was 7 ½ years old, and J.Q. was 6 ½ years old.

In addition to the aforementioned incident in the shower, E.Q. and J.Q. reported that [] Quiles would regularly hit them with belts as a form of discipline.

## PROCEDURAL HISTORY

[] Quiles was charged with attempted involuntary deviate sexual intercourse (IDSI) with a child, unlawful contract with a minor — sexual offenses, corruption of a minor, endangering the welfare of a child, and indecent assault of a person less than 13 years of age. The case was consolidated with **Commonwealth v. Quiles**, CP-51-CR-9508-2021, which involved charges related to interactions [] Quiles had with his other son, J.Q. The jury trial was held in November 2022. Pursuant to the tender years doctrine, both E.Q. and J.Q.'s statements to [] Ginorio and to the PCA forensic interviewer were admitted at trial as substantive evidence. [] Quiles was found guilty of all charges in the present case.

At the charge conference, [d]efense [c]ounsel requested that the [trial court] give a prompt complaint instruction when charging the jury. The [trial court] determined that the facts of the case rendered the prompt complaint instruction unnecessary. Defense objected to the failure to give the prompt complaint instruction after the jury was charged. The [trial court] also charged the jury with the general credibility of witness instruction, Section 4.17 of the Pennsylvania Suggested Standard Criminal Jury Instructions.

On February 10, 2023, the [trial court] sentenced [] Quiles to an aggregate sentence of six (6) to twelve (12) years of incarceration followed by three (3) years of probation. Defense filed a timely [p]ost-[s]entence [m]otion raising the claim that the verdict was against the weight of the evidence and requesting a new trial. Following a hearing, the [trial court] denied the motion.

Defense timely filed a [n]otice of [a]ppeal on July 11, 2023. The [trial court] issued an [o]rder pursuant to Pa.R.[A.]P. 1925(b) on July 13, 2023. Defense filed a timely statement of errors[.]

Trial Court Opinion, date, at 1-4 (record citations, brackets, and footnotes omitted).

Quiles raises three issues for our review:

[1.] Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice in light of the evidence presented at trial?

[2.] Did the trial court err and/or abuse its discretion when it denied defendant's request to give Pennsylvania Suggested Standard Jury Instruction (Criminal) 4.13A?

[3.] Should the SORNA lifetime registration requirement imposed as part of the sentence in the matter *sub judice* be vacated because the SORNA statute is facially unconstitutional?

Appellant's Brief, at 7 (suggested answers and trial court answers omitted).

Quiles asserts the verdict is against the weight of the evidence because there was no physical or forensic evidence, victim E.Q. had a motive to lie, and E.Q.'s testimony was not corroborated by his foster mother, Ginorio. **See** Appellant's Brief, at 18-19. Further, because E.Q. delayed reporting, he should not be believed. **See id.** at 21. We disagree.

The standard regarding weight of the evidence claims is well-settled:

A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court, and a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice.

In reviewing a challenge to the weight of the evidence, the function of an appellate court is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose an abuse of discretion.

*Commonwealth v. Kimmel*, 331 A.3d 26, 32-33 (Pa. Super. 2025) (citation omitted).

The trial court provided a very detailed decision addressing Quiles' weight of the evidence claim:

> The [trial court] disagrees with some of [d]efense's characterizations of the evidence. In particular, [d]efense contends that at trial E.Q. did not remember [] Quiles' command to suck his penis until prompted by leading questions. This does not accurately recount E.Q.'s testimony. After some initial introductory questions, E.Q.'s testimony proceeded as follows:
>
> > Q. Okay [E.Q.], did something happen at one of those unsupervised visits that made you feel uncomfortable?
> >
> > A. Yes.
> >
> > Q. Could you please tell the ladies and gentlemen what happened.
> >
> > A. I was going to the house when [Ginorio] dropped me off, and then he told us to take a shower. And then we took a shower, and then when we took a shower, while we were in the shower, he told us to take off our clothes and get in the shower, and he came in, too, with no clothes. And then he put his private part near me, and then he told me that—I don't feel comfortable saying this.
> >
> > ***
> >
> > Q. Did the defendant say anything to you when he was getting closer with his private parts?
> >
> > A. I don't remember, but I know he said "suck it."
> >
> > Q. He said "suck it?"
> >
> > A. Yes, that's what he said. I remember that.

N.T., 11/02/2022, at 88-92. It is clear from the testimony that E.Q. initially remembered that [] Quiles said something to him. He did not initially share what was said because he expressed discomfort in saying that part. That is not an unusual experience for any witness, particularly a 12-year-old boy sitting in a room full of adults being asked to recount crude and sexualized statements. The Commonwealth addressed the witness' discomfort by moving to other topics, and then circling back to the question of what [] Quiles said. At that point, the questions asked of E.Q. were not leading, and the witness provided the answer without anyone suggesting what the answer should be.

Ultimately, all of the other issues argued by [d]efense come down to the question of witness credibility. If the victim's testimony is found to be credible by the jury, then the lack of corroborating physical evidence alone will not undermine that victim's testimony. [*See*] *Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. [] 2016). Moreover, this is not a case of a single complaining witness' testimony. E.Q.'s accounts of the evidence in question were corroborated by the eye-witness accounts of J.Q.[a]

> [a] The [trial court] recognizes that there is a discrepancy between J.Q's account and E.Q's account. Specifically, J.Q. consistently reported that [] Quiles' penis went inside of E.Q.'s mouth, which E.Q. has consistently denied. Nevertheless, J.Q.'s account corroborates the charge of attempted IDSI of a child.

It is also the jury's prerogative to decide the amount of weight to place on suppositions of a victim's potential motive for fabrication. *See* [*Commonwealth v.*] *Clay*, 64 A.3d [1049,] 1056-57 [Pa. 2013]. The lack of a prompt complaint may produce a doubt as to whether the offense indeed occurred, or whether it was fabricated by the witness. [*See*] *Commonwealth v. Lane*, 555 A.2d 1246, 1250 (Pa. 1989). When there is a delayed report, the sincerity of the complaint is at issue if the delay was unreasonable or unexplained. *See* [] *Commonwealth v. Bradford*, 198 A.2d 412 (Pa. Super. [] 1964); *Commonwealth v. Freeman*, 441 A.2d 1327 (Pa. Super. [] 1982). While [d]efense argued that the evidence suggest[s] that E.Q. had a motive to fabricate because he wanted to stay with his foster parents, E.Q. provided alternative explanations. In particular, he explained that he was torn; part of him wanted to stay with his foster parents, while

another part of him "really wanted to go back home." N.T., 11/02/2022 at 111-12. He also provided an explanation for the delayed report. In particular, he explained that he was scared that his foster mother would be disgusted by him and that he would be removed from his foster parents' home.

\*\*\*

The [trial court] acknowledges the various inconsistencies in the witnesses' testimony as described by [d]efense, but those inconsistencies are not so clearly of greater weight that to ignore them or give them equal weight would deny justice to [] Quiles. Inconsistencies within testimony or between testimony and prior statements are not unusual in any case, and particularly so in a case involving young children and a delay of more than 5 years between the time of the incident and the time of trial. The young age of E.Q. (7 years old at the time of the incident) also explains his hesitancy in disclosing the incident, including his initial denials when confronted by [] Ginorio. Despite all of these challenges, the core nature of the accusations remained consistent once E.Q. chose to disclose. When E.Q. told [] Ginorio in November 2017, when he told PCA during the forensic interview a month later, and when he testified five years later in court, he recounted the same incident where [] Quiles exposed his penis in the shower, instructed E.Q. to "suck it," and touched E.Q.'s face with his penis. E.Q. and J.Q. also both shared their experiences with [] Quiles repeatedly hitting them with a belt to enforce discipline in the home.

The jury had the opportunity to consider all of the competing evidence, including the lack of physical evidence, E.Q's possible motives to fabricate, the delayed report, evidence of [] Quiles' good character, and all of the inconsistencies between the witnesses' testimony and prior statements as noted by [d]efense, and, after considering everything, the jury determined that the witnesses' testimony was truthful and accurate and that the totality of the evidence was adequate to prove the elements of the crimes charged beyond a reasonable doubt. It would be improper for the [trial court] to discard the determinations of the jury. The evidence in support of the verdict is not so tenuous, vague, and uncertain that the resulting verdict shocks the conscience, nor does it deny justice; therefore, the verdict is not against the weight of the evidence.

Trial Court Opinion, 10/10/23, at 6-9 (some record citations omitted).

After a thorough review of the record, and after closely scrutinizing the trial court's evaluation of the evidence, we cannot find the trial court abused its discretion, and find that the trial court's decision in this regard is well founded and clearly explained. Therefore, Quiles first claim does not merit relief.

Quiles next argues the trial court erred in failing to provide a prompt complaint jury instruction. *See* Appellant's Brief, at 23. Quiles asserts this instruction was required because E.Q. delayed reporting the assault for months. *See id.*, at 24. We disagree.

Our scope and standard of review regarding the failure to provide a specific jury instruction is as follows:

> When considering a trial court's failure to give a requested jury instruction, the relevant inquiry for this Court is whether such charge was warranted by the evidence in the case. Moreover, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case.
>
> > If we find that the court should have included the instruction, then we must determine whether its omission prejudiced the defendant. If we determine the decision not to give an instruction was an error of law which might have prejudiced the defendant, then we must determine the error was not harmless before granting a new trial.

*Commonwealth v. Dula*, 262 A.3d 609, 635-36 (Pa. Super. 2021) (quotation marks, brackets, and citations omitted).

The specific instruction Quiles requested is Pennsylvania Suggested Standard Criminal Jury Instruction 4.13A, which provided[3]:

> 1. Before you may find the defendant guilty of the crime charged in this case, you must be convinced beyond a reasonable doubt that the act charged did in fact occur and that it occurred without [*name of victim*]'s consent.
>
> 2. The evidence of [*name of victim*]'s [failure to complain] [delay in making a complaint] does not necessarily make [his] [her] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the [failure to complain] [delay in making a complaint] should be considered in evaluating [his] [her] testimony in deciding whether the act occurred [at all] [with or without [his] [her] consent].
>
> 3. You must not consider [*name of victim*]'s [failure to make] [delay in making] a complaint as conclusive evidence that the act did not occur or that it did occur but with [his] [her] consent. [*Name of victim*]'s failure to complain [at all] [promptly] [and the nature of any explanation for that failure] are factors bearing on the believability of [his] [her] testimony and must be considered by you in light of all the evidence in the case.

Pa. SSJI (Crim.) § 4.13A.

This Court has explained:

> The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no

---

[3] We note that, as of September 2024, the suggested standard criminal jury instruction 4.13A has been deleted from the Pennsylvania Suggested Standard Criminal Jury Instructions, and the subcommittee has specifically discouraged the use of the former instruction. Trial in this case was held in 2022, therefore, we do not consider its deletion in our review of the trial court's decision not to provide this instruction to the jury.

policy in our jurisprudence that the instruction be given in every case.

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For instance, where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citations, quotation marks, and brackets omitted).

"Furthermore, in cases where the victim is a child, [our Supreme] Court commented on the importance of questioning whether the immaturity of the child occasioned the delay as opposed to a design to deceive." *Commonwealth v. Dillon*, 925 A.2d 131, 138 (Pa. 2007) (citation and internal quotation marks omitted). "This is especially true where the perpetrator is one with authority or custodial control over the victim." *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (citation omitted). Notably, "in a case such as this, where some evidence favored a prompt complaint instruction and some did not, it fell within the trial court's discretion to deny this instruction." *Commonwealth v. Williams*, 274 A.3d 722, 737 (Pa. Super. 2022).

The trial court explained its reasoning for not instructing the jury pursuant to section 4.13A:

In the present case, there was a delay in reporting the incident of approximately 4-5 months. At the time in question, E.Q. was 7 years old. The perpetrator of the offense was his father. [] Quiles

- 10 -

used corporal punishment in relation to the sexual offense in question, and he also more routinely used corporal punishment to enforce E.Q.'s compliance with household rules. E.Q. also explained that he was afraid to report the incident because he was afraid that his foster mother would see him with disgust and that he would be taken away from his foster home. Based on all of the above, the evidence supported the [trial court's] determination that E.Q. did not understand the offensive nature of the conduct, and, therefore, the prompt complaint instruction was not appropriate.

Even if the [trial court's] failure to give the prompt complaint instruction was an error, it was harmless. The [trial court] still instructed the jury on the considerations for evaluating credibility of witnesses generally. Section 4.17 of the Pennsylvania Suggested Standard Criminal Jury Instructions can provide the factfinder with the sufficient framework to question the victim's credibility. The general credibility of witness instruction addresses any possible biases, prejudices, and motives of the complainant.

Lastly, the [trial court] did not limit [d]efense's ability to elicit testimony about the delayed report during trial, nor did the [trial court] limit [d]efense's ability to argue those facts to the jury. In closing arguments, [d]efense argued that the delayed report evidenced that E.Q. was lying about the sexual offense. Thus, the [d]efense was not prejudiced by the lack of the prompt complain[t] instruction.

Trial Court Opinion, 10/10/23, at 10-11 (record citations and citations omitted).

Just as in *Williams*, there was some evidence that favored a prompt complaint instruction and some that did not. *See Williams*, 274 A.3d at 737. The trial court's analysis contains no legal error and is logically explained; consequently, we again find no abuse of discretion in its analysis. Quiles has failed to convince us he was prejudiced by the lack of a prompt complaint instruction. Therefore, this claim does not merit relief.

Finally, Quiles argues SORNA is facially unconstitutional and therefore he should not be required to register as a sex offender. *See* Appellant's Brief, at 28-41. As our Supreme Court held SORNA is constitutional in ***Commonwealth v. Torsilieri***, 316 A.3d 77 (Pa. 2024), Quiles is not entitled to relief.

Quiles brief was filed before the decision in ***Torsilieri***, so he did not have the benefit of our Supreme Court's analysis. Quiles argues SORNA's irrebuttable presumption that all sex offenders are at high risk for reoffending does not survive scrutiny and SORNA constitutes criminal punishment. ***See*** Appellant's Brief, at 34. Our Supreme Court in ***Torsilieri*** disagreed with both propositions.

We begin by noting that "[g]enerally, the constitutionality of legislation is a pure question of law for which the scope of review is plenary, and the standard of review is *de novo*." ***Torsilieri***, 316 A.3d at 86 (citation omitted). "[L]egislation carries with it a strong presumption of constitutionality, which will not be overcome unless the legislation is clearly, palpably and plainly in violation of the Constitution." ***Id.*** (citation and internal quotation marks omitted).

"Statutes creating irrebuttable presumptions are not *per se* violative of the constitution." ***Id.*** at 92 (citation omitted). In ***Torsilieri***, the evidence defendant presented to defeat this presumption actually supported it. ***See id.*** at 99 ("[R]ather than refuting it, the evidence *supports* the legislative

presumption; the evidence validates the statutory underpinnings of Subchapter H.") (footnote omitted, emphasis in original). Other than the evidence presented to the trial court in **Torsilieri**, Quiles has not provided any evidence to rebut the presumption that sex offenders reoffend at a higher rate than individuals convicted of other crimes. **See** Appellant's Brief, at 33-34. As that evidence supported SORNA's irrebuttable presumption that sex offenders reoffender more than other offenders, this claim cannot merit relief.

As to the second proposition, Quiles again solely relies on the trial court's findings in **Torsilieri**, which our Supreme Court rejected. **See id.** at 34-36; **Torsilieri**, 316 A.3d at 109 ("In our view, weighing the **Mendoza-Martinez**[4] factors does not compel the conclusion that Subchapter H is punitive."). Our Supreme Court found SORNA does not qualify as criminal punishment. **See Torsilieri**, 316 A.3d at 110. As such, we are bound by our Supreme Court's decision in **Torsilieri** and Quiles' final claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/4/2025

---

[4] **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963).

- 13 -